UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CHARLES TOWN PROPERTIES OF LOUISIANA L L C** | **CASE NO.  2:22-CV-00148** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CERTAIN UNDERWRITERS AT LLOYDS LONDON SUBSCR ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Plaintiff's Motion for Partial Summary Judgment" (Doc. 25) wherein Charles Town Properties of Louisiana, LLC ("Charles Town") moves for partial summary judgment finding that Defendant Insurers, Certain Underwriters at Lloyd's, London Subscribing to Policy #17-7590154970-S-00; Crum & Forster Specialty Insurance Company; Indian Harbor Insurance Company; and QBE Specialty Insurance Company (collectively referred to as the "Defendant Insurers") engaged in bad faith in violation of Louisiana Revised Statutes 22:1892 and 22:1973 in the adjustment of Plaintiff's property damage claim resulting from Hurricanes Laura and Delta.

## FACTUAL STATEMENT

In mid-2020, Charles Town acquired 23 multi-unit properties consisting of fifty-three structures with over 250 residential units throughout Lake Charles, Louisiana (the "Insured Properties").[1] The sole source of Charles Town's business income is rent generated from these units.[2]

---

[1] Plaintiff's exhibit A, Declaration of Beau Flavin, ¶ 5.
[2] *Id.*

On or about August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana and on October 9, 2020, Hurricane Delta made landfall near Lake Charles, Louisiana causing damage to Plaintiff's Insured Properties. During the relevant time period, Defendant Insurers were subscribing carriers of ICAT Commercial Property Insurance Policy No. 17-7590154970-S-00 (the "Policy") to cover property damages, and business income loss caused by direct physical loss or damage to the property. The Policy has limits of insurance of $21,121,593.00 and $2,675,100.00 of business interruption coverage. The Policy limits are further limited by per building limits.[3]

Plaintiff notified Defendant Insurers of the Hurricane claims, and ICAT served as the Defendant Insurers' Claims Administrator.[4] Young & Associates ("YA") served as Defendant Insurers' building consultants. YA performed an initial inspection in conjunction with Tony Murphy, an independent adjuster with Crawford & Company, on September 11, 2020. YA Submitted an initial Rough Order of Magnitude in the amount of $5,746,000.00 prior to Hurricane Delta.[5]

After Hurricane Delta, Charles Town's managing partner, Beau Flavin, reported to ICAT's claims examiner, Dominick Scarangella, additional damage to the Insured Properties caused by Hurricane Delta.

YA and its teams ultimately developed repair estimates of its own to the interior, exterior, and roofs for each location based on visual observation during their initial

---

[3] See Policy, Plaintiff's exhibit B-2, Doc. 25-2.
[4] Plaintiff's exhibit B, ICAT deposition.
[5] *Id.* pp. 261-265.

inspections and agreed to scopes made by Tony Murphy (independent adjuster) and representatives of Charles Town.[6]

On July 16, 2021, Charles Town provided Defendant Insurers a series of extensive estimates for mitigation, demolition, roof and build back from Charles Town's experts, C2 Construction ("C2"),[7] all of which reflected an initial estimated total of loss of $9,443,464.29 from both storms.[8] Defendant disputes that the estimated total of loss was for both storms.[9] As of October 15, 2021, Defendant Insurers had paid Charles Town $4,073,034.67 for a combination of building repair, lost business income, and mitigation.[10]

ICAT, YA, and defense counsel determined that a follow-up inspection of the fifty-three locations by Nelson Forensics, an independent engineering firm, was necessary to verify all damage and work performed to date.[11] The reinspection of each location that took place on February 15, 2022,[12] was conducted by multiple teams who documented all work performed to date and potential supplemental items that could be associated with damages from Hurricane Delta, which occurred after YA's initial inspection.[13]

Following the February 2022 inspection, in May of 2022, Nelson Forensics produced reports for each location which documented the status of all repairs, outlined observed damage, assessed causation and made recommendations for "additional repairs

---

[6] *Id.* pp. 261-66.
[7] Exhibit 9 of Plaintiff's exhibit B, pp. 174-82,
[8] See Plaintiff's exhibit B, ICAT deposition, exhibits 17 and 18, pp. 261-264, 261-262, 280-281.
[9] See Defendant's response to Statement of Material Fact No. 17.
[10] Plaintiff's exhibit C, p. 4; Plaintiff's exhibit B, ICAT deposition, pp. 169-71.
[11] *Id.* pp. 267-74, and exhibit 17 attached.
[12] *Id.*
[13] *Id.*

for distress caused by both hurricanes."[14] In connections with Nelson Forensics, YA was asked to consider potential items that could be added to their initial estimates, and an explanation for any additional amounts.[15]

Following the inspection in February 2022, YA issued to defense counsel a Final Report dated July 4, 2022, which concluded that Charles Town was entitled to an additional $2,586,330.57 in increased policy benefits to repair the damage caused by the two hurricanes.[16]

On September 14, 2022, YA reissued the July 4, 2022 Final Report labeled Final Report V4.[17] Final Report V4 contained the exact same estimate that was in the July 4, 2022 Final Report. It also included an explanation between YA's initial estimate total and YA's July 4, 2022 estimate. Defendant disputes that Charles Town was entitled to any additional payment and asserts that additional analysis, including evaluation of the applicable deductibles on a per building basis separately for both Hurricane Laura and Hurricane Delta was necessary.[18]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a

---

[14] *Id.* pp. 271-72.
[15] *Id.* pp. 267-78.
[16] *Id.,* pp. 261-264.
[17] *Id.* pp. 261-62, 280-81.
[18] Defendant's exhibit 2.

genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Charles Town seeks a ruling that the Defendant Insurers engaged in bad faith in violation of Louisiana Revised Statutes 22:1892 and 22:1973 by withholding payment of

undisputed Policy benefits owed for damage to Plaintiff's property caused by Hurricanes Laura and Delta.

Louisiana law imposes penalties on insurers who arbitrarily and capriciously fail to pay an insured's claim. Louisiana Revised Statutes § § 22:1892 and 22:1973.  In order to recover statutory penalties, a claimant has the burden to show "that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) acted in an arbitrary and capricious manner." *Louisiana Bag Company, Inc. v. Audubon Indemnity Company*, 999 So.2d 1104 (La. 2008). A satisfactory proof of loss must "fully apprise" the insurer of the insured's claim to trigger the insurer's obligation. *Id.* at 1119. The phrase "arbitrary, capricious, or without probable cause" means "unjustified, without reasonable or probable cause or excuse." *Id*. at 1114. In other words, when there is a "good faith defense" and "substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss," failure to pay is not "arbitrary, capricious or without probable case." *Id.* at 1114;  *Lemoine v. Mike Munna, LLC,* 148 So.3d 205, 215 (La. App. 1 Cir. 6/16/14); see also  *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003). Such arbitrary and capricious conduct describes "an insurer whose willful refusal of a claim is not based on a good faith defense." *Id.*

The bad faith statutes are penal in nature and must be strictly construed. *Id.* at 1120; see also *Richardson v. GEICO Indem.* 48 So.3d 307, 314 (La. App. 1 Cir. 9/10/10). "Penalties and attorney fees are not assessed unless it is clearly shown that the insurer was arbitrary, capricious, and without probable cause in refusing to pay." See *McClain v General Agents Ins. Co. of America, Inc.*, 438 So.2d 599, 602 (La.App. 2 Cir. 6/6/1983).

Thus, to prevail on a bad faith claim against an insurer, it is the plaintiff's burden to prove three elements: (1) the submittal of a satisfactory proof of loss to the insurance company, (2) the insurance company's failure to timely pay within thirty (§ 1892) or sixty days (§ 1973) after the submittal of a satisfactory proof of loss, and that (3) the insurer's failure to timely pay was clearly arbitrary, capricious, or without probable cause. *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1020-1021 (La. 2003).

Charles Town's Motion requests a finding of bad faith based upon the Defendant Insurer's failure to pay an undisputed amount of damages within thirty (or sixty days) of a detailed written report prepared by the Defendant Insurer's own damage consultants whereby those consultants definitively concluded that Charles Town was entitled to an additional $2,586,330.57 in increased costs to repair the damage sustained by the two hurricanes.[19]

Charles Town argues that the Defendant Insurers received satisfactory proof of loss of the additional Policy benefits owed to it by July 4, 2022, at the latest. Following the inspections in February of 2022, YA issued a Final Report dated July 4, 2022 to defense counsel, which concluded that Charles Town was entitled to an additional $2,586,330.57, as calculated by their own experts. Charles Town maintains that despite this undisputed amount of loss, Defendant Insurer did not issue any additional payment until eight (8) months later. Thus, Charles Town argues that Defendant Insurers' refusal to pay constitutes arbitrary and capricious handling of the claim entitling it to bad faith penalties.

---

[19] Plaintiff's exhibit B, ICAT deposition, pp. 261-64, exhibits 17 and 18.

Defendant Insurers argue that there are genuine issues of material fact for trial as to Plaintiff's bad faith claims. Defendant Insurers remark that as of December 2020, after having reviewed and approved more than 50 estimates provided by its building consultants, Defendants paid Charles Town $3,850,711.92, net of per building deductibles that totaled $713,900.79. Thereafter, Defendant Insurers paid mitigation costs of $222,322.75. By October 2021, Charles Town had been paid $4,073,034.67.[20]

Next, Defendant Insurers complain that Charles Town did not make a claim for damages resulting from Hurricane Delta until it filed suit on January 18, 2022, and that to the extent there was damage from Hurricane Delta, it was minimal.[21] Defendant Insurers also point to the C2 Construction estimates Plaintiff provided to defense counsel, which reflects a "date of loss" of "8/27/2020." Defendant Insurer remark that none of the C2 Construction estimates allocate any damage to Hurricane Delta.

Defendant Insurers assert that it was not until February 2023, that all information was available to evaluate the full allocation of damages between Hurricane Laura and Hurricane Delta, to allow it to calculate the additional per building deductibles applicable to damages from Hurricane Delta and to allow it to make additional payments to Plaintiff.

On March 1, 2023, Defendants provided a detailed explanation of the supplemental payments being made separately for Hurricanes Laura and Delta.[22] Plaintiff received a

---

[20] Defendants' exhibit 2, declaration of Samantha Freire.
[21] Defendant's exhibit a, see also Defendant's exhibit 3, Beau Flavin deposition, pp. 133-134.
[22] Defendant's exhibit 2.

supplemental payment of $736,587.33 for Hurricane Laura and a payment of $1,053,008.41 for Hurricane Delta, net of $575,735.86 deductibles in March 2023.[23]

Defendant Insurers assert that the claims evaluation history was multi-step and complex due to the volume of properties covered by the Policies, the timeline of Plaintiff's assertion for Hurricane Laura then separate Hurricane Delta damages and initial and then supplemental evaluations by various consultants of the fifty-three (53) building across sixteen (16) locations. Defendants Insurers argue that these factors directly impacted the Plaintiff's assertions that Defendants were arbitrary, capricious or without probable cause in their payments for the separate Hurricane Laura and Hurricane Delta damages to Plaintiff.

The Court finds that there are genuine issues of material fact for trial as to whether or not Defendant Insurers were in violation of Louisiana Revised Statute 18:1892 and/or 18:1973 for the alleged bad faith handling of Charles Town's claims.

## CONCLUSION

For the reasons set forth herein, the Motion for Partial Summary Judgment filed by Plaintiff will be denied.

**THUS DONE AND SIGNED** in Chambers on this 11th day of July, 2023.

*[signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[23] *Id.*